Charles W. Froessel, J.
A group of citizens, undoubtedly motivated by the best of intentions, submit for approval a certificate of a proposed corporation to be known as Patriotic Citizenship Association, Inc.
Upon a previous application, the learned Justice presiding in this part disapproved in a memorandum the form of certificate then presented (52 N. Y. S. 2d 311, 312). He stated, among other things: “ The seven purposes for which this corporation is to be formed include some that are subject to criticism ” and thereupon expressly disapproved paragraphs ‘6 e ” and “ g” thereof. With respect to paragraph “ c ” of said certificate, he continued: It “ may not be against the public policy of this State but it does seem to propose Gestapo methods that are contrary to the principles of government under which we live. However, that objection is not one of the grounds for refusing to approve of this certificate, because however bigoted in its opposition to free speech or freedom of the press a group may be, the very principle of freedom of speech and freedom of the press requires that they be allowed to print and speak their intolerance. They may approach the point where they incite a breach of the peace and run afoul of the Penal Law, but that situation is provided for by statute. In the meantime, though they may foment strike and may be engaged on what has been called a ‘ witch hunt/ it is hard to draw the line between such un-American activities and the allowable use of freedom of speech and of the press. The application to the Supreme Court for approval does not merely present the question of the form of the petition or certificate, but also its substance. The duty thus presented to the Court to pass upon the propriety of the objects of the corporation so as to be able to decide whether or not the Supreme Court, in the name of the State, should approve of them, presents the problem of whether or not they violate the public policy of the State. It might plausibly be said that these objects are inconsistent with our public policy, but in *996 case of doubt as to whether or not alleged rights to free speech and free press publicity are in conflict with the policy, the benefit of the doubt should be given to those who seek to incorporate. A mere reading of that purpose would seem to put it outside of our public policy but, nevertheless, it is not upon that ground that the certificate is rejected but rather for the grounds already stated.”
The certificate of incorporation presently before the court contains precisely the same purposes as the previous certificate, excepting that paragraphs “ e ” and “ g” thereof have been eliminated. Paragraph “ c ”, hereinbefore referred to, however, is retained in the present certificate and reads as follows:
“ (c) To sponsor, advocate and promote such amendments to the Constitution of the United States and the Constitutions of the various States and the Federal and State Laws, as may be necessary to provide that all persons who shall believe in, advise, advocate, or teach, or who are members of or affiliated with any organization, association, society or group, that believes in, advises, advocates, or teaches the overthrow by force or violence of the Government of the United States or a change by force or violence in its Organic Laws, or who shall write, publish, or cause to be written or published, or who knowingly circulate, distribute, print or display, or knoivingly cause to be circulated, distributed, printed, published or displayed, or who knowingly have in their possession for the purpose of circulation, distribution, publication or display, any written or printed matter advising, advocating or teaching the overthrow by force or violence of the Government of the United States, or a change by force or violence in the Organic Laws of the United States, shall be deemed to have voluntarily relinquished and forfeited their rights of citizenship, as well as their right to become citizens, and that such persons shall be forever incapable of holding any office of trust or profit under the United States Government, or under the Government of any of the States of the United States, or of receiving relief or old Age Benefits or Unemployment Insurance, or receiving any benefits from the Government of the United States or any political subdivision thereof, or of exercising any rights of citizens thereof, and providing that all Naturalized Citizens who shall have thus relinquished and forfeited their rights of citizenship shall be taken into custody and deported in such manner as may be provided by law.” (Italics mine.)
Counsel informs the court that the language quoted has been taken, in large part, from section 137 of title 8 of the United States Code relating to aliens, anarchists, etc. In the certificate now before the court, the subscribers apply language from this *997 section to all persons, including citizens, and propose to imbed said language into our Constitution.
Aside from the question of whether or not it is either wise or necessary (Gitlow v. New York, 268 U. S. 652; Stromberg v. California, 283 U. S. 359; De Jonge v. Oregon, 299 U. S. 353), to amend the fundamental law of the land to attain the end sought, I am constrained to withhold the approval of this court by reason of the language employed in said paragraph “ c ”. A mere reading of the portion of said paragraph which I have italicized above demonstrates how, in their effort to punish severely the abuse of a right, the subscribers seek to restrict the liberties of the individual citizen in the fair use of such right. Assume, by way of illustration, that any written or printed matter advising, advocating, or teaching the overthrow by force or violence of the Government of the United States, or a change by force or violence in the organic laws of the United States, were distributed to a group of Boy or Girl Scouts, the members of the American Legion, or any other loyal or patriotic group, or indeed to the members of this proposed corporation; assume further that as a member of any of such groups, I should cause to be gathered a number of copies of such printed matter and knowingly have them in my possession for the express purpose of circulation or distribution among leading and patriotic citizens with a view to combating the subversive organization responsible for them, I would be deemed, among diverse other things, to have voluntarily relinquished and forfeited my rights of citizenship, and would be forever incapable of holding any office of trust or profit under the United States Government, or under the government of any State.
It is unthinkable that approval should be given on behalf of the People of the State of New York to anyone to incorporate for the purpose of advocating a constitutional amendment of this character. Enthusiasm, however well intentioned, to accomplish a particular purpose defeats, by the looseness of the language employed in the certificate before me, its proper aims. The application must be denied.